# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **LAWRENCE R. TRAMMELL**, | ) |
| Plaintiff, | ) Case No. 1:04CV00137 |
| v. | ) **OPINION** |
| **JO ANNE B. BARNHART,** **COMMISSIONER OF SOCIAL SECURITY**, | ) By: James P. Jones </br> ) Chief United States District Judge |
| Defendant. | ) |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Lawrence R. Trammell filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2005) ("Act") and Supplemental Security Income ("SSI") benefits under title XVI of the Act, 42 U.S.C.A. §§ 1381-1383d (West 2003). This court has jurisdiction pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Trammell applied for DIB on March 6, 2003, and for SSI on February 27, 2003, and was denied initially on April 30, 2003 and on reconsideration August 26, 2003. Trammell received a hearing before an Administrative Law Judge ("ALJ"), and by decision dated December 22, 2003, the ALJ found that the plaintiff was not under a disability. The ALJ's decision became final upon approval of the Appeals Council on November 9, 2004.

The parties have briefed the issues, and the case is ripe for decision.

*II. Facts.*

Trammell was thirty-nine years old at the time of the ALJ's decision. He started but did not complete eighth grade, and last worked as a construction helper.

He alleges disability due to panic disorder, left-sided numbness and tingling, and numbness in his arms and legs.

The ALJ considered medical evidence from Janice F. Gable, M.D. and Robert S. Spangler, Ed.D. Their relevant findings are briefly summarized below.

The ALJ determined that, although the plaintiff alleged physical disability due to numbness and tingling in his arms and legs, the record did not demonstrate that the plaintiff sought or required treatment for such complaints. Thus, the ALJ found that Trammell failed to demonstrate a resulting medically determinable impairment.

In a March 21, 2003, signed statement the plaintiff reported that he regularly performed activities requiring a reasonable level of mental and/or physical functioning. (R. at 61-67.)

The plaintiff received Emergency Room treatment at Johnston Memorial Hospital on five occasions from November 14, 1997 through March 16, 1998. (R. at 167-76.) Treatment was rendered for urinary frequency, shortness of breath, nervousness, inguinal pain, lightheadedness, fuzzy vision, feeling shaky, hot flashes, and anxiety. (*Id.*)

The plaintiff received treatment at Stone Mountain Health Services, primarily by Dr. Janice F. Gable, from April 22, 1997 to September 30, 2003. Conditions and complaints addressed include daily chest pain, left arm pain, carpal tunnel syndrome,

- 3 -

Case 1:04-cv-00137-JPJ-PMS   Document 14   Filed 03/20/06   Page 3 of 11   Pageid#: 48

left shoulder pain, left arm numbness, abdominal pain, peripheral neuritis, fatigue, hot flashes, shakiness, fidgetiness, left lower extremity numbness, fuzzy vision, panic disorder, panic attacks, lack of energy, dizziness, lack of concentration, inability to comprehend what he reads, fear of heights, irritability, probable attention deficit disorder (ADD), inability to tolerate loud noises, inability to tolerate heat, inability to tolerate his children, fragmented sleep, nervousness, memory problems, impatience, constant teeth grinding, sexual dysfunction, anxiety, problems with anger, insomnia, social isolation, depression, and urinary frequency. (R. at 95-125, 180-85.) Dr. Gamble has treated the plaintiff intermittently for a panic disorder since April 1998, at which time she prescribed medications to help alleviate his symptoms. (R. at 108.) When seen in May 1998, April 1999, and October 1999, the plaintiff reported that his symptoms had improved with the medications. (R. at 108-09.)

The plaintiff was not seen again until April 2001, at which time he reported having some panic symptoms. (R. at 107.) Dr. Gable referred the plaintiff to a psychiatrist, but the records do not reflect that he followed through with the recommendation. (*Id.*) Dr. Gable referred the plaintiff to a mental health center again in November 2001; however, the record does not indicate that he sought such treatment at that time. (R. at 106.) The plaintiff missed his appointment in December 2001. (*Id.*) Dr. Gable reported that the plaintiff's panic disorder had improved in

February 2002. (R. at 104.) In March 2002, the plaintiff reported that he had sought work as a mason's assistant. (R. at 103.) Although the plaintiff reported panic attacks when seen in August 2002, Dr. Gable noted that he was not taking the correct dosage of his medication. (*Id.*) The plaintiff reported mild improvement in September 2002, but reported problems disciplining his children. (R. at 102.)

On September 10, 2002, Dr. Gable introduced the plaintiff to Ms. Harper, a licensed clinical social worker, who scheduled seven therapy sessions with the plaintiff, of which the plaintiff attended three. (R. at 97-102.) At the October 8, 2002, session the plaintiff reported that he felt frustrated, angered easily, and that he suffered panic attacks. The plaintiff also reported several hospital visits for panic attacks. (R. at 98.) At the October 22, 2002, session the plaintiff reported improved anger and frustration control, and improved discipline of his children. (R. at 97.) Ms. Harper opined that the plaintiff's global assessment of function ("GAF") score was seventy. (R. at 100.)

Dr. Gable saw the plaintiff again in April 2003, noting that he had missed two fall appointments and had failed to follow up with the social worker. (R. at 95.) The plaintiff reported that within the last year he had attempted employment with a government contractor with whom he felt comfortable and who accommodated his anxiety symptoms, but was ultimately unsuccessful due to physical anxiety

- 5 -

Case 1:04-cv-00137-JPJ-PMS   Document 14   Filed 03/20/06   Page 5 of 11   Pageid#: 50

symptoms, difficulty maintaining focus, and feelings of frustration. (*Id.*) Dr. Gable noted no evidence of depression or mania. Trammell also reported that he was wary of medication side effects, and stated that he had finished the Zyprexa prescription but discerned no change in his symptoms. Dr. Gable continued the plaintiff on Fluoxetine. (*Id.*)

On August 6, 2003, consultants Kathy J. Miller, M.Ed., a licensed psychological examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Trammell. Dr. Spangler reported that the plaintiff demonstrated age appropriate gross and fine motor skills, was socially confident and comfortable, but frequently needed instructions repeated and demonstrated erratic concentration. (*Id.*) The plaintiff reported that the panic disorder medication prescribed by his primary care physician for his panic disorder decreased the intensity and frequency of his symptoms. (R. at 141.) Dr. Spangler reported that the plaintiff was alert and oriented with blunted affect, was often slow and deliberate in his responses to questioning, and often took the maximum amount of time on task to complete or respond. (R. at 141-42.) He stated that the plaintiff appears to be a person of borderline intelligence, emotionally depressed, and reporting panic disorder. (*Id.*)

Dr. Spangler stated that the plaintiff's social skills were adequate and that he related well with the examiner, and was polite and cooperative with clear, coherent

- 6 -

Case 1:04-cv-00137-JPJ-PMS   Document 14   Filed 03/20/06   Page 6 of 11   Pageid#: 51

communication.  (*Id.*)  While an intelligence measure indicated a verbal IQ score of 63, a performance IQ score of 69, and a full scale IQ score of 66, (R. at 143-44),  Dr. Spangler opined that the obtained scores were invalid in that Trammell's slow thought processing, psychomotor retardation, and problems with concentration underestimated the plaintiff's ability. (R. at 143.) Dr. Spangler reported that given the plaintiff's previous work history and his reading scores, his true intellectual functioning was most likely within the borderline range.  (*Id.*)  Based on his mental status evaluation, Dr. Spangler diagnosed the following: panic disorder, mild with medication; depression, not otherwise specified, mild; rule out major depression; borderline intellectual functioning, estimated; problems with concentration, moderate; and problems with memory in all areas, moderate.  (R. at 144.)  Although he opined that the plaintiff was limited in his ability to understand, remember, and sustain concentration and persistence, he indicated that the plaintiff was only mildly limited in his ability to interact socially and to adapt.  (*Id.*)

On August 22, 2003, Dr. Hugh Tenison, a state agency psychologist, reviewed the findings of Ms. Miller and Dr. Spangler.  (R. at 146-58.)  Dr. Tenison found that despite having limitations, the plaintiff was capable of performing simple, repetitive work of an unskilled nature.  He also stated that the plaintiff is likely to work more easily and effectively with few other people. (R. at 158.)

On October 8, 2003, Dr. Gable opined that Trammell has no useful ability to function in the areas of following work rules; relating to co-workers; dealing with the public and work stresses; functioning independently; maintaining attention and concentration; and demonstrating reliability. (R. at 177.) Dr. Gable further opined that the plaintiff's ability to carry out complex job instructions was good; the ability to carry out detailed, but not complex, job instructions was good; and his ability to carry out simple job instructions was unlimited or very good. (R. at 178.) Dr. Gable further opined that the plaintiff's ability was fair in the areas of use of judgment with the public; interaction with supervisors; and predictable relations in social situations. (R. at 177-79.)

Based upon the evidence, the ALJ determined that Trammell is unable to return to past relevant work, but has the residual functional capacity to perform simple, unskilled low-stress jobs at any level of exertion work, as defined in the regulations. Based upon the testimony of a vocational expert ("VE"), the ALJ found that there existed a significant number of jobs in the national economy which Trammell could perform, including machine feeder, janitor, cleaner, kitchen worker, waiter's assistant, assembler, and hand packer. The ALJ ultimately concluded that the plaintiff was not under a disability.

- 8 -

Case 1:04-cv-00137-JPJ-PMS   Document 14   Filed 03/20/06   Page 8 of 11   Pageid#: 53

*III. Analysis.*

Trammell asserts that the ALJ's opinion is not supported by substantial evidence. In particular, he alleges that the ALJ erred in failing to give proper weight to the opinion of the plaintiff's treating physician, and in failing to find that Trammell meets or equals the requirements for a Listed Impairment under the regulations. For the following reasons, I disagree.

Trammell relies primarily on the opinion of Dr. Gable, his family physician, to support his allegation of disability, and alleges that her opinion was not given the proper weight by the ALJ. I find, however, that substantial evidence in the record supports the ALJ's determination. Dr. Gable is not a specialist in mental health issues, and she treated Trammell only intermittently for a panic disorder beginning in April 1998. Further, Trammell never sought the specialized mental health treatment that Dr. Gable recommended. I find reasonable the ALJ's determination that Dr. Gable's treatment records were intermittent and based primarily on Trammell's own complaints, rather than on objective medical testing. I also find that the ALJ afforded proper weight to the Spangler report despite the typographical transcribing errors contained therein. In sum, I find that there is substantial evidence in the record to support the weight accorded Dr. Gable's testimony by the ALJ.

Next, Trammell argues that the ALJ erred in failing to find that he meets or equals a Listed Impairment as set out in the regulations. Specifically, Trammell argues that the record supports a finding that he meets Listed Impairment 12.05C, requiring an IQ score of between 60 and 70 and a physical or other impairment imposing an additional work-related limitation of function. I find substantial evidence in the record to support the ALJ's determination. Dr. Spangler's report clearly provides that the IQ scores (allegedly falling within the Listed Impairment definition) are invalid as inconsistent with Trammell's work history. Thus, the record supports the ALJ's finding that Trammell is not mentally retarded, and fails to meet the first prong of the Listed Impairment.

In sum, I find that the ALJ thoroughly reviewed all of the records presented regarding Trammell's applications for DIB and SSI, and that the ALJ's decision denying benefits is supported by substantial evidence in the record.

### *IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: March 20, 2006

　/s/ JAMES P. JONES
Chief United States District Judge